PEOPLE ex rel. GEGAN v. WHITE.

(Court of General Sessions, New York County. June, 1914.)

DISORDERLY CONDUCT ⊂⇒1—WHAT CONSTITUTES.

     Where accused interrupted and interfered with religious services held on Sunday, attempting an address while the regular minister was conducting the services, he was guilty of disorderly conduct tending to a breach of the peace.

     [Ed. Note.—For other cases, see Disorderly Conduct, Cent. Dig. §§ 1–7, 9–13; Dec. Dig. ⊂⇒1.]

<hr>

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On a prosecution in Magistrate's Court by the People, on the complaint of James J. Gegan, Bouck White was convicted of disorderly conduct, and he appeals. Affirmed.

Accused interrupted religious services, attempting to address the pastor conducting them on the matter of debating a social question.

James E. Smith, Asst. Dist. Atty., for the People.

James W. Osborne, of New York City, for defendant.

MALONE, J. I am prepared to announce my judgment. After the very elaborate and ingenious arguments that have been heard in this case, the court cannot expect to receive any further information upon the subject, and, as it entertains no doubt about the case, it thinks that it is its duty to announce its opinion, and not suffer the parties to remain in suspense.

The question involved, as I view it, lies within a very narrow compass: Was the defendant properly found guilty of disorderly conduct tending to a breach of the peace? That will depend, as the court thinks, upon whether this conduct was calculated to stir up tumult and confusion. Assuredly we cannot but admit that no man, under our system of law, is punishable for the discontent or dissatisfaction of his own mind. Men have a right to their own opinions, and to express them freely and fully in the public prints and in other ways that are legal and proper, and we should all feel sorry to see any person convicted at the bar of a criminal court because, perhaps, in an unguarded, unfortunate way he had delivered sentiments or done acts that were not strictly legal, or which, if construed too strictly, might be considered sufficient to bring him within the penalties of the statutes.

But I think the law is perfectly well settled that no man in a house of religious worship, on the Lord's Day, in a discontented state of mind himself, is to infuse that discontent into the minds of other persons, by which the tendency is to disturb the tranquility and peace of those communicating at divine service. If he does that, he becomes a very capital offender against the law, because whatever disturbs the peace of mind, the comfort, of persons thus congregated, I think is an act that is of detriment to us all. The question which the magistrate had to determine in this case was whether, from all the circumstances as they appeared on the hearing, the defendant comes within that description.

The place was the Calvary Baptist Church, and the date when these proceedings occurred was Sunday, May 10th, about 11 o'clock in the morning. I think that the quiet, undisturbed worship of God in a house of worship involves precious doctrines to the people, and cannot be diminished even by well-meaning and respectable persons; and Sunday was not a proper time, nor was the Calvary Baptist Church the proper place, for the disputatious discussion upon the responsibilities of citizenship and the duties of men. It was the time and place where forms of conduct are to be cautiously and strictly observed. Surely, if you strip religion of its quiet forms and external symbols, you will fix it to the earth. It would seem, too, that it was of primary importance to the community that their retreat from a world of stress and excitement on that Sunday morning should not be disturbed,

and that end, as I view it, would be defeated, without the instrumentality of outward quietness and proper behavior, and by conduct that is such as will arrest and fix the attention of the communicants and stimulate those who are desponding, those who come there for contemplation and for religious consolation. No one assuredly can respect religion and at the same time insult its forms and proper symbols.

We cannot too well form a correct estimate of how intimately great and little matters are connected together in all such cases. Any conduct, therefore, which is calculated to destroy that nice observance of orderly behavior which has always existed on the Lord's Day in houses of worship is a matter of great importance to the multitude of men generally. It seems to the court that such a proceeding, from all the evidence that was submitted before the magistrate and read here, was clearly contrary to the religious feelings and habits of the people of this country, and cannot be reconciled with good sense or good feeling.

The character of the defendant's vocation should have taught him that some of the ends of religion are to promote peace and harmony in the world, and to inculcate in the minds of men a submission to government and obedience to the laws. He seems, from the evidence I have heard read here, to have soiled the luster of his calling, by deviating from the paths of orderly and proper conduct, when he preferred to stand forth as the champion of confusion and lawlessness. It was necessary, therefore, that the municipal authorities should take upon themselves the "nipping in the bud" of an act of such flagrant disorder as is disclosed here, and the apprehension and prosecution of so daring an offender. If our municipal authorities have not, within the law, authority to provide against such evils of confusion and disorder in the house of prayer, then, indeed, are our people at the mercy of the combination of those who respect no law, no order, and no government except their own unbridled wills.

This is the view I take of the case, and I think it does not conflict with any rule of law, or any adjudged case, in this state. While it is beyond the power of the law to rectify men's minds, and to infuse into them that spirit which prompts them to the doing of praiseworthy things, promotive of the peace and comfort of the community, still it is within the power—yes, the duty—of the law to take from those who are indifferent and evil-minded the ability of doing public mischief, and to limit and restrain them of their liberty, if needs be, when they grossly abuse it. Courts, I think, would but poorly discharge their obligations, if by the judgments which they announce they did not endeavor to secure the comfort of the community by taking from such people the power, at least for the time, of disturbing the public mind. Indeed, it would do violence to the understanding of men to maintain that the defendant's conduct was not disorderly. That it inevitably tended to a breach of the peace is clearly sustained by the evidence, because it actually resulted in a flagrant breach of the peace. Upon consideration the court cannot say that there was not abundant evidence before the magistrate to support the judgment of conviction of the defendant of disorderly conduct tending to a breach of the peace.

The last question, respecting the sentence, is equally clear. This

court regards it as substantially right, as fully answering what the law was intended to prohibit and discourage.

Let the judgment of conviction, therefore, as well as the sentence of the magistrate, stand affirmed.